UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-293-KSF

MOTHER DOE I, INDIVIDUALLY AND
AS PARENT AND GUARDIAN FOR MINOR O.G., *et al.*                    PLAINTIFFS

v.                              **OPINION & ORDER**

SHEIKH HAMDAN BIN RASHID
AL MAKTOUM, *et al*                                        DEFENDANTS

\* \* \* \* \* \* \* \* \*

This matter is currently before the Court on the motion of the defendants [DE #30], Sheikh

Hamdan Bin Rashid Al Maktoum ("Sheikh Hamdan"), to dismiss the Complaint [DE #1] filed on

September 11, 2007.  In his motion to dismiss, Sheikh Hamdan argues that the plaintiffs' complaint

should be dismissed because: (1) the Court lacks personal jurisdiction over Sheikh Hamdan; (2) the

Court should abstain from exercising jurisdiction under principles of international comity; (3) the

Alien Tort Statute does not provide jurisdiction for extraterritorial claims unconnected with the

United States and its residents; (4) the case presents a nonjusticiable political question; and (5) the

plaintiffs failed to exhaust available remedies.  After careful review, and for the reasons set forth

below, the Court finds that the exercise of personal jurisdiction over Sheikh Hamdan would violate

his due process rights under the United States Constitution.  Accordingly, this matter will be

dismissed pursuant to Rule 12(b)(2) of the Federal Rules for Civil Procedure for lack of personal

jurisdiction over Sheikh Hamdan.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In September 2007, the plaintiffs filed their Complaint [DE #1] alleging that Sheikh Hamdan, the Finance Minister of the United Arab Emirates ("UAE"), and other unnamed defendants, participated, in their personal capacity, in the kidnaping, trafficking, and enslavement of young boys from South Asia and Africa, some as young as two years old, who were transported to the UAE and other Persian Gulf countries to serve as jockeys in camel races.  The plaintiffs, former child jockeys and their parents, in their individual capacities and as personal representatives of the children, allege that during the course of their enslavement as jockeys, the children were at times, *inter alia*, starved, deprived of sleep, injected with hormones to keep them from growing, and sexually abused.

The plaintiffs bring this lawsuit pursuant to the Alien Tort Statute, 28 U.S.C. § 1350, which provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  The plaintiffs claim that the defendants engaged in, conspired to engage in, and/or aided and abetted: (1) slavery or the slave trade in violation of the law of nations; and (2) forced child labor in violation of the law of nations.  Additionally, the plaintiffs assert state law claims for battery, assault, intentional and/or negligent infliction of emotional distress, wrongful death, and survival claims against the defendants, seeking compensatory and punitive damages in an amount to be determined.

## II.    PERSONAL JURISDICTION

Although Sheikh Hamdan's Rule 12(b) motion is founded upon several arguments, the Court will first address his contention that the Court lacks personal jurisdiction over him.  Specifically, Sheikh Hamdan contends that the Court lacks personal jurisdiction over him because he has insufficient contacts with the State of Kentucky to satisfy constitutional due process standards.

2

Accordingly, Sheikh Hamdan contends that the Court should dismiss the case in its entirety.

In response, the plaintiffs assert that the Court may exercise personal jurisdiction over Sheikh Hamdan based on what the plaintiffs maintain are his extensive contacts with the State of Kentucky. Alternatively, the plaintiffs argue that should the Court find that Sheikh Hamdan's contacts with Kentucky are insufficient, then the Court may exercise personal jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure based upon his nationwide contacts. Each of these potential bases for jurisdiction is discussed below.

## A.    LEGAL STANDARDS FOR DISMISSAL PURSUANT TO RULE 12(B)(2)

When deciding a motion to dismiss pursuant to Rule 12(b)(2), a district court has the discretion to employ one of three procedural alternatives: "(1) it may decide the motion upon the affidavits alone"; (2) "it may permit discovery in aid of deciding the motion"; or (3) "it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)(citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Regardless of the method which the court chooses, however, it is the plaintiff who "bears the burden of establishing that jurisdiction exists." *Id*. at 1458; *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). "The weight of the plaintiff's burden, however, depends on whether the court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue (either pretrial or during trial)." *Serras*, 875 F.2d at 1214. In this case, neither party has requested a hearing and the Court believes that it is proper to decide the personal jurisdiction issue on the written submissions alone.

When deciding the personal jurisdiction issue on the written submissions alone, the court "must consider the pleadings and the affidavits in the light most favorable to the plaintiff." *Welsh*

3

*v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). Simply, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," and the court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1458-9. However, the plaintiffs may not rely only on their pleadings to answer the movant's affidavits, "but must set forth, 'by affidavit or otherwise[,] . . . specific facts showing that the court has jurisdiction." *Serras*, 875 F.2d at 1214 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

### B. KENTUCKY'S LONG-ARM STATUTE

Kentucky's long-arm statute, KRS § 454.210, authorizes a court to exercise personal jurisdiction over a defendant if the claims arise out of some connection with Kentucky, cause injury in Kentucky, or fall in another category not relevant to this case. The parties agree that Kentucky's long-arm statute does not have any specific provision that would allow personal jurisdiction over Sheikh Hamdan for the claims in this case.

Nevertheless, Kentucky courts exercise personal jurisdiction over non-residents "to the full constitutional limits of due process," and jurisdiction is not limited by the Kentucky long-arm statute because "the statute itself is not the exclusive grantor of jurisdiction." *National Grange Mut. Ins. Co. v. White*, 83 S.W.3d 530, 533 (Ky. 2002); *see also Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627-28 (6th Cir. 1998). According to the Kentucky Supreme Court, even if a defendant's conduct does not fit within one of the clauses of Kentucky's long-arm statute, a court may still exercise personal jurisdiction over a non-resident if the defendant's contacts with Kentucky are sufficient under Constitutional due process standards. *National Grange Mut. Ins. Co.*, 83 S.W.3d at 533-34. Thus, the Court must examine Sheikh Hamdan's contacts with Kentucky in accordance with Constitutional due process standards.

4

## C.    CONSTITUTIONAL DUE PROCESS AND PERSONAL JURISDICTION

Personal jurisdiction over an out-of-state or out-of-country defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Depending on the nature of the minimum contacts in the case, personal jurisdiction can be either specific or general. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994). Specific personal jurisdiction is limited to suits "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Fortis Corporate Ins. v. Viken Ship Management.*, 450 F.3d 214, 218 (6th Cir. 2006). In this case, the plaintiffs concede that specific jurisdiction is inapplicable, and thus the Court only must consider whether the plaintiffs have established that general personal jurisdiction is present.

The burden on the plaintiffs to establish general personal jurisdiction is much higher than for specific personal jurisdiction *Helicopteros*, 466 U.S. at 414-16. General personal jurisdiction requires that the defendant's contacts with the forum be substantial, continuous, and systematic. *Id.*; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952); *Aristech Chem. Int'l Ltd.*, 138 F.3d at 627-28. A defendant may "not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or of the "unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(citations omitted). In other words, the only contacts that matter for jurisdiction must "result from actions by the defendant *himself*." *Id*. (emphasis in original).

After evaluating Sheikh Hamdan's contacts with Kentucky, the Court must also consider

whether exercising personal jurisdiction over him would comport with traditional notions of fair play and substantial justice.  This second stage of the due process inquiry asks whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case.  *Int'l Shoe Co.*, 326 U.S. at 320; *Burger King Corp*, 471 U.S. at 477-78.  The Supreme Court has stated that a court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3)  the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental substantive social policies.  *Asahi Metal Ind. Co. v. Superior Ct. Of Cal., Solano* City, 480 U.S. 102, 113-14 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

### 1.      SHEIKH HAMDAN'S CONTACTS WITH KENTUCKY

In this case, there is much dispute about whether Sheikh Hamdan's alleged contacts with Kentucky justify the exercise of general personal jurisdiction.  In support of their argument in favor of general personal jurisdiction, the plaintiffs rely on their Complaint and the affidavit of Michael Hall, a researcher employed by the plaintiffs' counsel to discover facts related to Sheikh Hamdan's contacts with Kentucky [DE #44-3].  Hall's affidavit is founded largely upon websites and news articles related to Sheikh Hamdan and Shadwell Farm in Lexington, Kentucky, not on any personal knowledge.

The plaintiff's Complaint alleges that Sheikh Hamdan's United States' horse breeding and racing operation is located at Shadwell Farm LLC in Lexington, Kentucky [DE #1, ¶33].  Based on his review of the various websites and news articles, Hall contends that Sheikh Hamdan's contacts

with Kentucky date back to 1981 when he purchased a broodmare at the Keeneland Thoroughbred sales in Lexington, Kentucky [DE #44-2, ¶3]. Kentucky Secretary of State records indicate that Shadwell Farm, Inc, the predecessor to Shadwell Farm, LLC, was incorporated in November 1984 [DE #44-2, ¶4]. By March 2008, Hall contends that Shadwell Farm has sales of $6,200,000 and employs a staff of 200 [DE #44-2, ¶6].

Hall further claims that Sheikh Hamdan retains active control over his horse racing operations in the United States, including Kentucky, and abroad. Specifically, Hall contends that Sheikh Hamdan is personally involved in the management decisions at Shadwell Farm, including deciding where and when his horses will be raced, offering pre-race instructions, and selecting jockeys. Finally, Hall contends that Sheikh Hamdan has made substantial horse purchases in Kentucky, paid substantial stud fees in Kentucky, and traveled to Kentucky in his private aircraft [DE #44-2, ¶¶7-34].

On the other hand, Sheikh Hamdan argues that the plaintiffs have failed to show that his personal contacts with the state of Kentucky are sufficient to confer general personal jurisdiction. Sheikh Hamdan relies on the affidavit of Mirza Al Sayegh, his personal advisor of more than 20 years and President of Shadwell Farm LLC [DE #32-2]. According to Al Sayegh, the plaintiffs' allegations concerning Sheikh Hamdan's contacts with Kentucky are incorrect. Specifically, Al Sayegh states that Sheikh Hamdan:

     (a)    does not own or lease any real or personal property located in Kentucky or any other state in the U.S. in his individual capacity;

     (b)    does not have any personal bank or investment accounts of any type in Kentucky or any other state in the U.S.;

     (c)    does not conduct business in Kentucky or any other state in the U.S. in his individual

capacity;

(e)     does not personally employ anyone in Kentucky or any other state in the U.S.;

(f)     does not file tax returns in Kentucky or any other state in the U.S.;

(g)     is not a direct shareholder or owner of any business or corporation that is registered in, markets to, or conducts business transactions in Kentucky or any other state in the U.S.;

(h)     has not instituted any legal action in Kentucky or any other state in the U.S., or been named as a defendant in any legal action in Kentucky or any other state in the U.S., except for the action brought in Florida by the plaintiffs that was dismissed for lack of personal jurisdiction, and the present action;

(i)     has not in his individual capacity made any contribution or donation to a charitable or non-profit organization in Kentucky or any other state in the U.S.;

(j)     has not personally supervised or managed any charities, benevolent associations, or non-profit organizations in Kentucky or any other state in the U.S.;

(k)     has not in his individual capacity sponsored any activity, event, or organization in Kentucky or any other state in the U.S.

[DE #32-2, ¶4].

Al Sayegh further states that Sheikh Hamdan does not personally own any residences, farms, or horses in Kentucky and that he has never personally purchased horses in Kentucky [DE #32-2, ¶4]. To the extent that the plaintiffs impute the actions of Shadwell Farm to Sheikh Hamdan, Al Sayegh states that "Sheikh Hamdan is neither an officer nor director of Shadwell Farm and has no role in its day-to-day operations. Shadwell Farm has its own independent assets, management and board of directors" [DE #32-2, ¶6]. Shadwell Farm is wholly owned by a separate company organized outside of the United States that has no place of business in the United States. The company that owns Shadwell Farm is held by a trust that is also organized outside of the United States and has no place of business in the United States. Although Sheikh Hamdan is one of the

8

beneficiaries of the trust, he is not an agent, shareholder, director or officer of Shadwell Farm [DE #32-2, ¶7].  Finally, according to Al Sayegh, while Sheikh Hamdan has traveled to Kentucky on occasion over the last five years to observe the Kentucky Derby and to attend the Keeneland September Yearling Sales in Lexington, Kentucky, he never personally purchased any horses and his visits were only four or five days in duration [DE #32-2,¶¶ 7, 9].

After careful review, the Court finds that the plaintiffs have failed to establish a prima facie case of general personal jurisdiction.  In response to Sheikh Hamdan's motion to dismiss supported by Al Sayegh's affidavit, the plaintiffs cannot rely on the bare, unsupported allegations in their pleadings.  *See Serras*, 875 F.2d 1212, 1214 (6th Cir. 1989).  Rather, the plaintiffs must set forth "by affidavit or otherwise[,] . . . specific facts showing that the court has jurisdiction.  *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974).  The plaintiffs, however, rely on the Hall affidavit, which contains no testimony by a person with personal knowledge of the facts.  The Hall affidavit relies almost entirely on hearsay newspaper stories or their equivalent on Internet websites.  The plaintiffs must come forward with more than hearsay news stories or website equivalents to establish a prima facie case of jurisdiction.  *Steinbuch v. Cutler*, 518 F.3d 580, 589-90 (8th Cir. 2008) (by failing to refute factual evidence in response to the defendant's denial in an affidavit of continuous and systematic contacts in the state, the plaintiff failed to establish a prima facie case of general jurisdiction); *Turner v. City of Taylor*, 412 F.3d 629, 652 (6th Cir. 2005) (newspaper article was inadmissible and did not create a genuine issue of material fact for trial).

To the extent that the Hall affidavit relies on a few State corporate or business filings and alleged auction records of purchases of race horses, these records do not show contacts of a substantial, continuous and systematic nature necessary to allow the exercise of general personal

jurisdiction. The business records of Shadwell Farm attached to Hall's affidavit do not reveal that Sheikh Hamdan is an officer, owner, or manager of Shadwell Farm. Nevertheless, although the plaintiffs concede that Sheikh Hamdan is not an agent of Shadwell Farm for purposes of general personal jurisdiction, they argue that Sheikh Hamdan is subject to general personal jurisdiction based on his employment of agents in Kentucky. The affidavit of Al Sayegh clearly refutes this argument. Moreover, even if Sheikh Hamdan has some ownership interest in Shadwell Farm, the Supreme Court has held that an individual's ownership interest in a company cannot by itself justify general personal jurisdiction over that individual. *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977). Similarly, the Court cannot see how the fact that Sheikh Hamdan is a beneficiary of a trust which owns Shadwell Farm satisfies the minimum contacts analysis.

Finally, while the parties agree that Sheikh Hamdan has indeed traveled to Kentucky on occasion, the Court cannot find that these brief visits rise to the level of substantial, continuous, and systematic contacts necessary to support the exercise of general personal jurisdiction. In light of the evidence supporting Sheikh Hamdan's denial of substantial, continuous and systematic contacts with Kentucky, the burden falls on the plaintiffs to come forward with specific facts establishing a prima facie case of general personal jurisdiction over Sheikh Hamdan. By relying only on hearsay evidence and documents establishing Shadwell Farm's contacts with Kentucky, they have failed to meet this minimum burden.

## 2.      REASONABLENESS OF EXERCISE OF JURISDICTION

Even assuming Sheikh Hamdan's contacts with Kentucky were substantial, continuous and systematic, the Court would decline to exercise general personal jurisdiction over Sheikh Hamdan because the exercise of jurisdiction here would be unreasonable. "[W]here purposefully generated

contacts exist, courts must consider a panoply of other factors which bear on the fairness of subjecting a nonresident to the authority of a foreign tribunal." *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992); *see also World-Wide Volkswagen,* 444 U.S. at 292. Indeed, in certain circumstances, unreasonableness can trump a minimally sufficient showing of contacts. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994). The Supreme Court has stated that a court must evaluate the following factors as part of the "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interest of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal Ind. Co. v. Superior Ct. of Cal., Solano City*, 480 U.S. 102, 113-14 (1987).

To subject a non-resident such as Sheikh Hamdan to suit in Kentucky for activities which occurred solely in the UAE based only on the fact that he may have visited Kentucky on a few occasions and may be the beneficiary of a trust which owns and operates a farm and horse breeding/racing operation in Kentucky is unreasonable. Certainly, the burden on Sheikh Hamdan to defend himself in this action in Kentucky for his alleged activities in the UAE would impose a substantial burden on him. As noted by the Supreme Court, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co., Ltd*, 480 U.S. at 114.

Furthermore, because Sheikh Hamdan is not a resident of Kentucky, Kentucky's legitimate

11

interests in the dispute are considerably diminished.  The events described in the Complaint have no

connection with Kentucky and Sheikh Hamdan's alleged contacts with Kentucky do not bear any

relation to the allegations outlined in the Complaint.  Finally, the evidence and witnesses related to

the plaintiffs' allegations are not located in Kentucky.  Thus, the issues raised by the Complaint

could be more appropriately addressed in another forum.  Accordingly, the Court finds that the

exercise of personal jurisdiction over Sheikh Hamdan in this case would be unreasonable and

inconsistent with traditional fairness considerations.

### D.      RULE 4(k)(2)

As an alternative argument, the plaintiffs argue that the Court may exercise personal

jurisdiction over Sheikh Hamdan based on Rule 4(k)(2) of the Federal Rules of Civil Procedure,

which provides that:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the
> United States, serving a summons or filing a waiver of service is also effective, with
> respect to claims arising under federal law, to establish personal jurisdiction over the
> person of any defendant who is not subject to the jurisdiction of the courts of general
> jurisdiction of any state.

Fed.R.Civ.P. 4(k)(2).

In order to prove jurisdiction is proper under this Rule, "(1) the plaintiff's claims must be

based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the

exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise

of jurisdiction must be consistent with the Constitution." *Cent. States, Se. & Sw Areas Pension Fund*

*v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).  When considering whether Rule

4(k)(2) grants jurisdiction over a foreign defendant, the court must determine whether the defendant

has contacts with the nation as a whole sufficient to satisfy due process concerns.  The burden of

persuasion remains with the plaintiffs to make a prima facie showing of the defendant's nationwide minimum contacts. *See U.S. v. Swiss American Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999)*; Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir. 1993).

Based on the record before the Court, the plaintiffs have failed to satisfy their burden. For the same reasons that the plaintiffs have not established sufficient minimum contacts with Kentucky to allow the exercise of general personal jurisdiction, the Court finds that the plaintiffs have set forth no evidence of continuous or systematic contacts with the United States as a whole. Additionally, it would also be unreasonable for this court to exercise jurisdiction over Sheikh Hamdan based on Rule 4(k)(2) for the same reasons described above. Thus, the Court will not exercise personal jurisdiction over Sheikh Hamdan based on Rule 4(k)(2).

## III.    CONCLUSION

Given the finding that it lacks personal jurisdiction over Sheikh Hamdan, the Court will not address the other issues extensively briefed by the parties, the Washington Legal Foundation, and the United States. Accordingly, the Court, being fully and sufficiently advised, hereby ORDERS:

(1)    the defendant's motion to dismiss the Complaint [DE#30] is **GRANTED**;

(2)    all other motions are **DENIED AS MOOT**;

(3)    the plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction;

(4)    a Judgment consistent with this Opinion and Order will be entered contemporaneously herewith.

This November 18, 2008.



**Signed By:**

**_Karl S. Forester_** KSF

**United States Senior Judge**

13